UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:21-CV-00696-BJB-RSE

TOVA A.                                                                    PLAINTIFF

VS.

KILOLO KIJAKAZI,
*Acting Commissioner of Social Security*[1]                              DEFENDANT

## REPORT AND RECOMMENDATION

The Commissioner of Social Security denied Tova A.'s ("Plaintiff's") applications for disability insurance and supplemental security income benefits. Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). (DN 1). Both Plaintiff (DN 11) and the Commissioner (DN 13) have filed a Fact and Law Summary. The District Judge referred this case to the undersigned United States Magistrate Judge to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law, and Recommendations pursuant to 28 U.S.C. § 636(b)(1)(B). (DN 10).

I.  Findings of Fact

Plaintiff is 49 years old, lives with her mother in Louisville, Kentucky, and completed the eleventh grade. (Tr. 236, 237). Plaintiff is presently unemployed but has past relevant work experience as a bill collector from 2006 to 2009, a mail handler for the U.S. Postal Service from 2011 to 2012, a telemarketer from 2013 to 2014, and an office clerk for an optical business from 2015 to 2018. (Tr. 238; Tr. 32–33). On May 15, 2019, Plaintiff protectively filed for disability

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted for Andrew Saul as Defendant in this case.

insurance benefits ("DIB") under Titles II and XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3)("Act"), and for supplemental security income ("SSI") benefits under Title XVI of the Act, alleging disability beginning on May 27, 2018. (Tr. 212; Tr. 214). Plaintiff claimed she could not perform work at substantial gainful levels due to a traumatic brain injury and an inability to walk well. (Tr. 237). Her applications were denied initially on September 18, 2019 (Tr. 138) and upon reconsideration on December 18, 2019 and December 20, 2019 (Tr. 148; Tr. 156). Upon Plaintiff's request, a hearing was conducted in Louisville, Kentucky before Administrative Law Judge Neil Morholt ("ALJ Morholt") on September 30, 2020. (Tr. 41–71). ALJ Morholt issued an unfavorable decision on December 3, 2020. (Tr. 12–34).

ALJ Morholt applied the traditional five-step sequential analysis promulgated by the Commissioner for evaluating a disability claim, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Plaintiff has not engaged in substantial gainful activity since May 27, 2018, the alleged onset date. (Tr. 18). Second, Plaintiff has the severe impairments of traumatic brain injury and diffuse axonal injury with mononeuropathy; cervical spine fracture; fracture of sacrum/coccyx; neurocognitive disorder; and pseudobulbar affect. (*Id.*). Third, none of Plaintiff's impairments or combination of impairments meets or medically equals the severity of a listed impairment under 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 19). ALJ Morholt then determined Plaintiff has the residual functional capacity ("RFC") to perform "sedentary work" as defined in 20 C.F.R. 404.1567(a) with the following limitations:

> She can use the bilateral upper extremities for frequent pushing and pulling, and can use the non-dominant left upper extremity and hand for frequent handling, fingering, and reaching in all directions; she can use the bilateral lower extremities for occasional pushing, pulling, and operating foot controls, and can perform occasional balancing, stooping, crouching, kneeling, crawling, and climbing of ramps or stairs, but she cannot climb ladders, ropes, or scaffolds; she can have up

2

> to frequent exposure to vibration, unprotected heights, and moving mechanical parts; she can understand, remember, and carry out simple routine tasks in a routine work setting having minimal variations and little independent judgment for extended two-hour periods, and she can make simple work-related decisions; and she can interact with supervisors and co-workers for task completion and have occasional interaction with the general public.

(Tr. 21). Fourth, ALJ Morholt found Plaintiff unable to perform any of her past relevant work. (Tr. 32). Fifth and finally, considering Plaintiff's age, education, work experience, and RFC, ALJ Morholt determined there are jobs that exist in significant numbers in the national economy that she can perform. (Tr. 33).

Based on this evaluation, ALJ Morholt concluded that Plaintiff was not disabled, as defined in the Social Security Act, from May 27, 2018 through the date of his decision. (Tr. 19). Plaintiff sought review of ALJ Morholt's decision. (Tr. 207–09). The Appeals Council declined review on May 6, 2020. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Plaintiff sought judicial review from this Court. (DN 1).

## II.  Standard of Review

When reviewing the administrative law judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted). Instead, the Court's review of the administrative law judge's decision is limited to an inquiry as to whether the administrative law judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (internal citations omitted), and whether the administrative law judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the

3

other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

### III.  Conclusions of Law

Plaintiff raises several issues with ALJ Morholt's decision. First, Plaintiff suggests ALJ Morholt erred at step three in finding she did not have a listing-level impairment. (DN 11, at PageID # 848). Second, Plaintiff argues the record as a whole does not support the conclusion that she can perform sustained sedentary work. (*Id.* at PageID # 849). Plaintiff also offers that ALJ Morholt's finding related to transferability of job skills was plagued by his erroneous RFC determination. (*Id.* at PageID # 851). Next, Plaintiff contends ALJ Morholt failed to reconcile contradictory evidence in determining at step five that there were jobs in significant numbers in the national economy that she could perform. (*Id.*). Relying on these objections, Plaintiff submits ALJ Morholt's decision was not supported by substantial evidence. (*Id.* at PageID # 852).

The Commissioner counters that ALJ Morholt reasonably determined Plaintiff did not meet her burden of demonstrating a presumptively disabling listed impairment at step three. (DN 13, at PageID # 864). Likewise, the Commissioner suggests ALJ Morholt properly concluded that while Plaintiff's impairments significantly limited her to sedentary work, they were not disabling. (*Id.* at PageID # 870). The Commissioner also maintains that ALJ Morholt's hypothetical questions to the vocational expert properly excluded limitations not supported by the evidence and that his reliance on the expert's testimony was not error. (*Id.* at PageID # 871).

### A.  Listed Impairments

Plaintiff points to evidence she suggests "raise[s] a substantial question as to whether" she

meets Listings 11.00F, 11.04, 11.18, and 12.02. (DN 11, at PageID # 848–49). She suggests ALJ Morholt failed to rationalize why this evidence did not support a listed impairment. (*Id.* at PageID # 849). The Commissioner positions that Plaintiff did not provide sufficient evidence to show a disabling impairment. (DN 13, at PageID # 864, 867). Moreover, the Commissioner notes Plaintiff does not identify any evidence not considered by ALJ Morholt or that compels a contrary finding. (*Id.*).

A claimant must meet a substantial burden to demonstrate a listed impairment at step three. Listed impairments are considered by the Social Security Administration to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Reynolds v. Comm's of Soc. Sec.*, 424 Fed. Appx. 411, 414 (6th Cir. 2011). To be considered disabled at step three, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987). "An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment." *Bluer v. Comm'r of Soc. Sec.*, No. 1:13-CV-22, 2014 WL 700424, at *4 (W.D. Mich. Feb. 24, 2014) (citing 20 C.F.R. §§ 404.1525(d); 416.925(d)). Because a claimant who meets the requirements of a listed impairment at step three will be deemed conclusively disabled and entitled to benefits, the burden on the claimant is high. *Robinson v. Comm'r of Soc. Sec.*, 426 F. Supp. 3d 411, 421 (E.D. Mich. 2019).

ALJ Morholt determined that the record evidence did not document listing-level severity because "[n]o acceptable medical source designated to make equivalency findings has concluded that [Plaintiff] has an impairment that medically equals a listed impairment." (Tr. 19).

5

While ALJ Morholt considered several possible listings, Plaintiff only takes issue with his failure to find a listed impairment under Sections 11.00F, 11.04, 11.18, and 12.02. (DN 11, at PageID # 848). Plaintiff claims the record evidence demonstrates bulbar and neuromuscular dysfunction under Section 11.00F, vascular insult to the brain under Section 11.04, and/or traumatic brain injury under Section 11.18. (*Id.*). Plaintiff also believes ALJ Morholt should have found a neurocognitive disorder under Section 12.02. (*Id.*). At issue is also ALJ Morholt's rationale, which Plaintiff asserts is not adequately articulated to allow for meaningful review. (*Id.*).

To demonstrate a listed neurological impairment under Section 11.00, a claimant must provide medical and non-medical evidence (signs, symptoms, and laboratory findings) that includes medical history, examination findings, relevant laboratory tests, and the results of imaging such as x-ray, computerized tomography (CT), magnetic resonance imaging (MRI), and electroencephalography (EEG). The imaging must be consistent with the prevailing state of medical knowledge and clinical practice as the proper technique to support the evaluation of the disorder.

Section 11.00F serves to describe bulbar and neuromuscular dysfunction, providing that "[t]he bulbar region of the brain is responsible for controlling the bulbar muscles in the throat, tongue, jaw, and face" and "[b]ulbar and neuromuscular dysfunction refers to weakness in these muscles, resulting in breathing, swallowing, and speaking impairments." 20 C.F.R. Pt. 404. Subpt. P. App. 1, § 11.00F. Bulbar and neuromuscular dysfunction is not itself among the categories of impairments. Rather, it is a symptom of various neurological disorders evaluated under Section 11.00. *See* 20 C.F.R. Pt. 404. Subpt. P. App. 1, § 11.00A ("We evaluate epilepsy, amyotrophic lateral sclerosis, coma or persistent vegetative state (PVS), and neurological disorders that cause disorganization of motor function, *bulbar and neuromuscular dysfunction*, communication

6

impairment, or a combination of limitations in physical and mental functioning such as early-onset Alzheimer's disease.") (emphasis added). ALJ Morholt thus did not err in failing to designate, or even contemplate, bulbar and neuromuscular dysfunction as a listed impairment.

To satisfy the requirements of Section 11.04, vascular insult to the brain, a claimant's impairment must be characterized by one of the following:

> A. Sensory or motor aphasia resulting in ineffective speech or communication persisting for at least 3 consecutive months after the insult.
>
> OR
>
> B. Disorganization of motor function in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities, persisting for at least 3 consecutive months after the insult.
>
> OR
>
> C. Marked limitation in physical functioning and in one of the following areas of mental functioning, both persisting for at least 3 consecutive months after the insult:
>
> > 1. Understanding, remembering, or applying information; or
> > 2. Interacting with others; or
> > 3. Concentrating, persisting, or maintaining pace; or
> > 4. Adapting or managing oneself.

20 C.F.R. Pt. 404. Subpt. P. App. 1, § 11.04. Similarly, for a traumatic brain injury to reach listing level, either of the following must be present:

> A. Disorganization of motor function in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities, persisting for at least 3 consecutive months after the injury.
>
> OR
>
> B. Marked limitation in physical functioning, and in one of the following areas of mental functioning, persisting for at least 3 consecutive months after the injury:
>
> > 1. Understanding, remembering, or applying information; or
> > 2. Interacting with others; or
> > 3. Concentrating, persisting, or maintaining pace; or
> > 4. Adapting or managing oneself.

20 C.F.R. Pt. 404. Subpt. P. App. 1, § 11.18.

ALJ Morholt examined the residual effects of Plaintiff's traumatic brain injury and diffuse axonal injury with mononeuropathy, but found they did not reach listing level because there was no evidence of "sensory or motor aphasia resulting in ineffective speech or communication, significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements or gait and station within the specified parameters, or marked limitation in physical [functioning] combined with marked limitation in mental functioning[.]" (Tr. 19).

A claimant does not satisfy a particular listing unless all the requirements of the listing are present. *See Hale v. Secretary of Health & Human Services*, 816 F.2d 1078, 1083 (6th Cir. 1987). Plaintiff submitted no evidence of ineffective speech, disorganization of motor function, or marked limitation in physical and mental functioning. She simply notes "problems with ambulation and balance due to left extremity problems including her foot and toes," an "awkward, shuffling gait," and "left foot limp." (DN 11, at PageID # 848–49). Plaintiff also cites to "cognitive memory problems," difficulty with concentration, and "tearful spells." (*Id.*). Not only did ALJ Morholt consider all this evidence,[2] he accurately determined it did not show a severe, listing-level impairment. Plaintiff points to no evidence ALJ Morholt failed to consider or that would undermine his conclusion. The undersigned finds no error.

Plaintiff next claims the evidence shows a neurocognitive disorder under Section 12.02,

---

[2] *See* Tr. 22-23 ("She alleges that pain spreads to her low back with walking. She alleges having left foot and calf pain with muscle spasms and that all of the toes on that foot remain constantly 'spreaded' with a resulting inability to wear a closed-toe shoe on that foot. . . . The claimant has alleged having problems with walking and balance, walking slowly, limping, and tiring easily and need to rest briefly after 5-15 minutes of standing and walking. . . . Mentally, the claimant alleges having progressively worsening problems with memory, forgetfulness, focus, concentration and distraction with an attention span of only 10 minutes, needing reminders to take her medications and being inattentive to things like cooking on a stove. There is an allegation of depression and pseudobulbar affect with episodes of uncontrollable crying for 15 minutes that occur 3-4 times per week.").

satisfied by paragraphs A and B:

> A.  Medical documentation of a significant cognitive decline from a prior level of functioning in one or more of the cognitive areas:
>   1. Complex attention;
>   2. Executive function;
>   3. Learning and memory;
>   4. Language;
>   5. Perceptual-motor; or
>   6. Social cognition.
>
> AND
>
> B.  Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>   1. Understand, remember, or apply information.
>   2. Interact with others.
>   3. Concentrate, persist, or maintain pace.
>   4. Adapt or manage oneself.

20 C.F.R. Pt. 404. Subpt. P. App. 1, § 12.02A–B. Considering the paragraph B criteria, ALJ Morholt found the severity of Plaintiff's mental impairments does not meet or medically equal Listing 12.02. (Tr. 19). Specifically, ALJ Morholt found Plaintiff had only moderate limitations in each of the areas of mental functioning. (Tr. 20). Importantly, as ALJ Morholt explained, "the limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment," which requires a more detailed analysis of the areas of mental functioning. (Tr. 21). Indeed, the Sixth Circuit has held "the requirement that an ALJ assign a score to each of the B criteria" is more of an "'adjudicatory tool' designed to aid the SSA in determining the severity of the claimant's mental impairment . . . as opposed to a regulation intended primarily to confer important procedural benefits upon claimants." *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 656 (6th Cir. 2009). Even so, ALJ Morholt thoroughly considered each of the four subparts of the paragraph B criteria and cited to medical evidence supporting his conclusions. (*See* Tr 19–21). This is more than sufficient under the regulations.

9

Plaintiff has failed to demonstrate that she meets all the requirements for Listings 11.04, 11.18, or 12.02. ALJ Morholt properly determined that none of Plaintiff's impairments, alone or in combination, reached listing level. Plaintiff did not meet the substantial burden of demonstrating a listed impairment at step three, and ALJ Morholt did not err in continuing through the sequential analysis.

## B.  Residual Functional Capacity Finding

Plaintiff next claims ALJ Morholt's RFC finding was erroneous because the record evidence does not support that Plaintiff can perform sustained sedentary work. (DN 11, at PageID # 849). Plaintiff specifically criticizes ALJ Morholt's failure to account for her short-term memory limitation, citing to three pieces of evidence she believes ALJ Morholt should have credited. The first is Dr. Daniel Miller's August 2019 consultative psychological examination; the second, treatment records from Frazier Rehabilitation; and the third, Dr. Nathan Bodily's August 2019 consultative physical examination. (*Id.* at PageID # 850).

The Commissioner counters that ALJ Morholt not only considered this evidence, he included greater restrictions in his RFC "than outlined by . . . Dr. Bodily in terms of physical limitations and . . . Dr. Miller in term[s] of mental limitations relative to social interaction." (DN 13, at PageID # 871).

The residual functional capacity finding is the administrative law judge's ultimate determination of what a claimant can still do despite her physical and mental limitations. 20 C.F.R. §§ 416.945(a), 416.946. The administrative law judge bases her residual functional capacity finding on a review of the record as a whole, including a claimant's credible testimony and the opinions from a claimant's medical sources. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In addition to considering medical records and physician opinions in forming their RFC, ALJs must

10

assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

In the way of mental limitations, ALJ Mortholt's RFC provided that Plaintiff could "understand, remember and carry out simple routine tasks in a routine work setting having minimal variations and little independent judgment for extended two-hour periods," "interact with supervisors and co-workers for task completion and have occasional interaction with the general public," and "make simple work-related decisions." (Tr. 21).

As the Commissioner notes, ALJ Morholt clearly considered the evidence Plaintiff relies on in her Fact and Law Summary. First, ALJ Morholt provided that "Dr. Miller estimated the claimant to have low average cognitive ability and found her to show memory and concentration deficits for recall after 5 minutes, digit-span testing and serial subtraction by 7s," but still "found her to be rational, coherent, logical, organized, lucid and linear in her thinking and have a within normal limits fund of knowledge." (Tr. 28). ALJ Morholt also acknowledged Dr. Miller's observation that Plaintiff could "process instructions, sequence, transition, make informed decisions and perform basic mathematical calculations." (Tr. 28).

Second, ALJ Morholt clearly considered the Frazier Rehabilitation treatment records, citing "[b]y the time of discharge, the claimant was reported to have achieved her baseline level of cognitive functioning and had met stated functional objectives for attention, memory and executive abilities. There does not appear to have been any follow through on a recommendation for neuropsychiatric evaluation made at the time of discharge." (Tr. 27). Despite these positive findings, ALJ Morholt still provided substantial restrictions in Plaintiff's RFC to account for her mental limitations, including "little independent judgment" for extended periods, "minimal variations," and performance of only "simple, routine tasks." (Tr. 21).

Third, although Dr. Bodily's consultative physical examination would not bear on any of

Plaintiff's mental limitations, ALJ Morholt nevertheless considered it. He discussed Dr. Bodily's findings of "limited ranges of motion for lumbar spine flexion-extension (60 degrees), forward flexion of the bilateral hips (80 degrees) and left knee flexion-extension (90 degrees) with otherwise normal ranges of motion throughout," as well as "left leg weakness 4/5, maximal abduction of the left foot toes and a limping gait," but also noted that Dr. Bodily observed "an absence of musculoskeletal tenderness or muscle spasm, . . . normal ranges of motion and strength throughout the right lower extremity, [] normal coordination, [no] use of a cane or other assistive device and [] ability to sit and stand without difficulty and to get on and off an examination table without assistance." ALJ Morholt's RFC determination, which allows only for sustained sedentary work, incorporated physical restrictions consistent with these overall findings and the record as a whole.

Moreover, it is well settled that an administrative law judge's decision may be supported by substantial evidence "even if that evidence could support a decision the other way." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). While evidence may exist that would support a different finding, ALJ Morholt's consideration of the record was thorough, and his RFC determination was supported by substantial evidence. Plaintiff has pointed to no contrary evidence that ALJ Morholt failed to consider. The undersigned finds no error.

## C.  Transferability of Job Skills

Plaintiff offers that her objection to ALJ Morholt's finding related to transferability of job skills "is based on the findings and conclusions in Finding 5." (DN 11, at PageID # 851). ALJ Morholt concluded that transferability of job skills is immaterial since Plaintiff would be deemed "not disabled" whether or not she has transferable job skills. Relying on the allegedly erroneous RFC determination, Plaintiff argues this finding is "unfounded." (*Id.*). Because this two-sentence

contention solely relies on Plaintiff's attack on the RFC, which the undersigned finds well-supported, it is recommended that remand be denied on this basis.

### D.  Jobs in the National Economy

Lastly, Plaintiff cursorily states that ALJ Morholt's step five finding was flawed because the hypothetical questions posed to the vocational expert during the hearing did not accurately portray her limitations. (DN 11, at PageID # 851–52). Specifically, she argues ALJ Morholt improperly omitted "short-term memory problems" and "need for repetition and redirection" from the hypotheticals. (*Id.* at PageID # 852). Like her previous argument, Plaintiff's assertion here is rooted in her position that the RFC is unsupported and should have accounted for her short-term memory limitations. Without such accommodation, Plaintiff argues there is no opinion that guides whether any degree of limitation due to her memory issues would allow for sustained work. (*Id.*).

In response, the Commissioner reasons that ALJ Morholt's hypothetical questions to the vocational expert "properly excluded limitations that were not credibly supported by the evidence" and accurately reflected Plaintiff's impairments. (DN 13, at PageID # 871).

During the first four steps of the sequential analysis, the claimant has the burden of proof, but at step five the burden shifts to the Commissioner. *See Young v. Secretary of Health and Human Servs.*, 925 F.2d 146, 148 (6th Cir.1990) (citing *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980)); *Cole v. Secretary of Health and Human Servs.*, 820 F.2d 768, 771 (6th Cir.1987). At step five, the Commissioner must "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)).

At the hearing, ALJ Morholt posed seven hypotheticals to impartial vocational expert

13

James Adams. First, he inquired into whether a hypothetical individual of Plaintiff's age, education, and work experience with various restrictions could perform Plaintiff's past relevant work. (Tr. 63). Adams testified that all past relevant work would be eliminated for that hypothetical individual. (*Id.*). When asked whether any other jobs existed in the national economy that could be performed by such an individual, Adams testified that there were. (*Id.*). Next, ALJ Morholt asked whether the hypothetical individual with all the same limitations as the first could perform work at a sedentary level. (Tr. 64). Again, Adams explained past relevant work would be eliminated but jobs in the national economy do exist that the individual could perform. (*Id.*).

Third, ALJ Morholt amended the hypothetical to account for having to change positions every fifteen minutes, and fourth, to only occasionally allow for handling and fingering with the left hand. (Tr. 65). In both cases, Adams testified that all work would be precluded. (Tr. 65–66). The fifth hypothetical individual could not maintain concentration, persistence, and pace for two-hour periods and would need unscheduled breaks, and Adams opined that such an individual would be precluded from competitive work. (Tr. 66). The sixth hypothetical contemplated the individual needing to be off task for more than ten percent of the workday, and again, Adams indicated such an accommodation would eliminate work. (*Id.*). Lastly, hypothetical number seven would require one day off work per month on a consistent basis. (Tr. 67). Adams testified that this would likewise preclude all work. (*Id.*).

After reviewing the record evidence, the undersigned finds no error with the hypotheticals posed to James.  "It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Although Plaintiff disputes the limitations posed to the vocational expert, she suggests no alternatives that

14

she believes should have been presented instead. Plaintiff points only to ALJ Morholt's apparent failure to consider her memory issues and need for redirection, but hypothetical five specifically accounts for an inability to maintain concentration, persistence, and pace for an extended period. This hypothetical, along with the others, accurately portrayed Plaintiff's limitations and allowed the vocational expert to consider the affects of her mental limitations on her ability to perform sustained work. The Court finds no error with ALJ Morholt's examination of the impartial vocational expert at the hearing or his evaluation of Plaintiff's claim at step five generally.

## RECOMMENDATION

For the above-stated reasons, the Court finds that the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS THEREFORE RECOMMENDED** that the final decision of the Commissioner be **AFFIRMED.**

Regina S. Edwards, Magistrate Judge

United States District Court

July 15, 2022

## NOTICE

Therefore, under the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties.  Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.), *aff'd*, 474 U.S. 140 (1984).

Copies:          Counsel of Record