# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

| | |
|---|---|
| **TOVA A.** | **PLAINTIFF** |
| v. | No. 3:21-cv-696-BJB |
| **COMMISSIONER OF SOCIAL SECURITY** | **DEFENDANT** |

*****

### MEMORANDUM OPINION & ORDER

Tova A.[1] filed this lawsuit challenging the Social Security Commissioner's decision to deny her application for disability benefits. The Court referred this case to Magistrate Judge Regina Edwards "for consideration and the preparation of a Report and Recommendation." DN 10. Judge Edwards proposed factual findings and recommended that the Court affirm the Commissioner's final decision and dismiss the complaint. Report and Recommendation (DN 14). Tova A. timely objected. DN 15. After carefully considering those objections and the applicable law, the Court affirms the Commissioner's decision.

## I.

The Report and Recommendation fully and accurately details the factual record. Tova A. rode unrestrained in the backseat of a car that was involved in a 2018 accident; she sustained multiple injuries. *See* Administrative Record (DN 9) at 351. She filed an application for Supplemental Security Income and Disability Insurance Benefits, alleging a disability that began on May 27, 2018. Administrative Record at 20. The state agency twice denied the application: once following her first submission (on September 18, 2019) and again following reconsideration (on December 18, 2019). *Id*.

Tova A. then requested and received a hearing before an administrative law judge, who applied the five-step evaluation process prescribed by the Social Security regulations to determine whether she was disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The ALJ found that Tova A. had not engaged in substantial gainful activity since her wreck (step 1) and suffered several severe impairments including a traumatic brain injury (step 2). But the ALJ found that these impairments neither met, nor medically equaled, the severity of any listed impairment under the regulations that would automatically qualify her for benefits (step 3). *Id*. at 23–25. So, the ALJ proceeded to determine Tova A.'s residual-

---

[1] Consistent with General Order 23-02, this Order refers to the Plaintiff/Claimant solely by first name and last initial.

1

functional capacity (RFC) and found she had the capacity to perform "sedentary work" with some exceptions. *Id*. at 26. The ALJ concluded Tova A. was "unable to perform [her] past relevant work" because "the demands of the claimant's past relevant work exceed the residual functional capacity" (step 4), but she was capable of "making a successful adjustment to other work that exists in significant numbers in the national economy" (step 5). *Id*. at 37–39.

Because the ALJ determined that Tova A. was capable of adjusting to other work despite her impairments, the ALJ concluded she was not disabled, as defined in the Social Security Act, during the relevant time period. *Id*. at 39. Tova A. timely appealed to the Appeals Council, but the Council declined to review the ALJ's decision. *Id*. at 6. At that point, the ALJ's decision to deny Tova A.'s application for benefits became "the final decision of the Commissioner of Social Security" in her case. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543–44 (6th Cir. 2004) (citation omitted).

So Tova A. filed this complaint, challenging the Commissioner's decision denying her benefits. Complaint (DN 1). She made five total objections, which targeted the ALJ's findings and conclusions at three different steps. As to step three, the "equivalence" determination, she argued that the ALJ "did not comply with the law" when he concluded that Tova A.'s impairments did not meet or equal a listed impairment. Plaintiff's Fact and Law Summary (DN 11) at 2. As to the ALJ's RFC determination that Tova can perform sustained sedentary work, Tova A. asserted that "[t]he record as a whole" failed to support that conclusion. *Id*. at 3. And as to step five, she asserted that the ALJ's conclusion rested on inaccurate testimony from the vocational expert, and thus substantial evidence" did not "support the ALJ's decision." *Id*. at 5–6.

The Magistrate Judge considered these objections in the light of the administrative record and concluded that the ALJ complied with agency regulations, applied proper legal standards, and reached a determination supported by substantial evidence. Therefore Judge Edwards recommended affirming the Commissioner's decision. Report and Recommendations at 15. Tova A. timely objected (DN 15).

## II.

When a party properly objects to a magistrate judge's report and recommendation, the district judge must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). But the district judge need only review the magistrate judge's factual or legal conclusions specifically objected to by a party. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). An objection must "enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). One that "fails to specify the issues of contention," by contrast, "does not satisfy the requirement that an objection be filed." *Id*.

Upon proper objection, the district court must decide whether the ALJ's decision was "supported by substantial evidence" and "made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive …."). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citation omitted). This means "more than a scintilla of evidence but less than a preponderance." *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). So the "threshold ... is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). And the scope of the court's review "must be based on the record as a whole." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

An ALJ's findings must also permit meaningful review. They "must include a discussion of 'findings and conclusions, and the reasons or basis therefor[e], on all the material issues of fact, law, or discretion presented on the record.'" *Reynolds v. Comm'r of Soc. Sec.,* 424 F. App'x 411, 414 (6th Cir. 2011) (quoting 5 U.S.C. § 557(c)(3)(A)). If the ALJ articulates "an explained conclusion" of his findings that is supported by substantial evidence, the Court must affirm the Commissioner's decision. *Id.* at 416. This is true "even if the reviewing court would decide the matter differently" and even "if substantial evidence also supports the opposite conclusion." *Cutlip*, 25 F.3d at 286.

### III.

**1. Objection to Step Three Findings**

The ALJ found that Tova A.'s traumatic brain injury and diffuse axonal injury with mononeuropathy, along with other injuries, constituted severe impairments at step two. Administrative Record at 23. At step three, the ALJ evaluated Tova A.'s step-two impairments under listings 1.04, 11.04, 11.14, and 12.02. *Id.* at 24. The ALJ ultimately concluded that these impairments did not medically equal any of those listings. *Id.* at 24-26.

Tova A. argues the ALJ "use[d] an improper standard" (and the Magistrate Judge erroneously adopted this standard) by basing his step-three determination on the fact that "[n]o acceptable medical source designated to make equivalency findings has concluded that [Plaintiff] has an impairment that medically equals a listed impairment." Objections at 1. Tova A. did not raise this argument in her appeal, but only in her objections to the report and recommendation, and therefore forfeited the argument. In any event, this inaccurately characterizes the ALJ's opinion. The language Tova A. quotes is not a legal standard the ALJ used to restrict the evidence he considered. Rather, the ALJ simply observed that, among the information

3

indicating Tova A. failed at step three, no designated representative found a disability.

Consistent with the regulations, the ALJ "consider[ed] all evidence in [her] case record about [her] impairment(s)," whether derived from a designated representative or not. 20 C.F.R. § 416.926(c). Likewise, the Magistrate Judge explained the requirements under Listings 11.04, 11.18, and 12.02, reviewed the ALJ's conclusions under each, and determined the ALJ's conclusions were supported by substantial evidence. Report and Recommendation at 6–9; *Rogers*, 486 F.3d at 241. So this Court overrules this objection.

Tova A.'s main concern with respect to step three is that the ALJ failed to explain how the evidence she provided compares to any of the listings potentially at issue. *See* Objections at 2–5. This portion of the ALJ's decision does indeed appear, in places, light on references to the record supporting the ALJ's finding. But even assuming the ALJ insufficiently set forth his reasons, *see Reynolds*, 424 F. App'x at 414, the error was nevertheless harmless.

The Sixth Circuit has declined to "require remand when the ALJ provides minimal reasoning at step three of the five-step inquiry[.]" *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365 (6th Cir. 2014). Before concluding that an inadequate step-three analysis constitutes reversible error, courts review the decision of the "administrative agenc[y] for harmless error." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). Deciding whether a "cursory step-three analysis" constitutes harmless or reversible error turns on "whether the record raises a 'substantial question' as to whether [the claimant] could qualify as disabled" under a listing. *Pasiak v. Comm'r of Soc. Sec.*, 800 F. App'x 301, 304 (6th Cir. 2019).

To identify a substantial question about a disability, Tova A. "bears the burden" of producing evidence demonstrating that her step-two impairments meet or equal a listing at step three. *Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 WL 6882255, at *3 (6th Cir. Aug. 10, 2020). Otherwise the outcome of the ALJ's review would be foreordained even if a reviewing court remanded based on an insufficiently articulated decision. And a claimant like Tova A. "must do more" than merely "point to evidence on which the ALJ could have based his finding to raise a 'substantial question' as to whether he satisfied a listing." *Pasiak*, 800 F. App'x at 304 (quoting *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014)). That's because satisfying a listing at the third step results in an automatic determination of disability, so "the evidentiary standards for the presumptive disability under the listings are more strenuous than for claims that proceed through all five steps of the sequential analysis." *Doolittle v. Comm'r of Soc. Sec.*, No. 18-4176, 2019 WL 6464019, at *3 (6th Cir. Sept. 4, 2019) (cleaned up).

As to 11.04 and 11.18, Tova A.'s step-three objection fails because she has not produced evidence sufficient to establish a substantial question regarding whether her step-two impairments meet or equal a step-three listing. *See Pasiak*, 800 F. App'x

at 304. And as to 12.02, her objection fails because the ALJ's articulation of his findings did indeed permit meaningful review. *See Reynolds*, 424 F. App'x at 416.[2]

**Listing 11.04 (Vascular insult to the brain)**. This listing implicates three distinct impairments with their own criteria: (A) sensory or motor aphasia, (B) disorganization of motor function in two extremities, and (C) marked limitation in physical function and one area of mental functioning. 20 C.F.R. pt. 404, Subpt. P., App. 1 § 11.04A–C.

*11.04A* requires "[s]ensory or motor aphasia resulting in ineffective speech or communication." 20 C.F.R. pt. 404, Subpt. P, App. 1, § 11.04A. "Ineffective speech or communication" means an "extreme limitation" in a claimant's ability "to understand or convey" a message "in simple spoken language," resulting in an "inability to demonstrate basic communication skills, such as following one-step commands" or "telling someone about … basic personal needs" without assistance. *See* § 11.00E1. The ALJ found that Tova A. "does not have sensory or motor aphasia resulting in ineffective speech or communication" without specifically addressing these elements. Administrative Record at 24.

Tova A. cites a report from psychological consultant Daniel Miller as evidence that she meets this listing's requirements. Plaintiff's Fact and Law Summary at 3; Objections at 3. She points to Dr. Miller's "state[ment] that she struggled with concentration and time on task." Objections at 4. And Tova argues that "her crying spells occurred 3–4 times a week and lasted 15 minutes and that pain affected her concentration." *Id.*

But that same report from Dr. Miller also concludes that Tova A. "is able to process instructions." Administrative Record at 506. And while Dr. Miller checked "Yes" to a question about whether Tova's "ability to understand, remember, and carry out instructions" was "affected by [her] impairment," he did not rate any of the relevant options regarding simple or basic communication skills as "extreme" (nor "marked" for that matter)—which the listing requires. In fact, Dr. Miller determined her impairments only *mildly* affected her ability to understand, remember and carry out simple instructions, and make judgments on simple work-related decisions. *Id.* at 507. Dr. Miller concluded that Tova A.:

> was able to process instructions, sequence, transition, advocate for herself, and make informed decisions. She shows good insight into behavior. Judgment is intact. Rapport was established. She made a good faith effort to do her best.

---

[2] The Report and Recommendation addresses only listings 11.04, 11.18, and 12.02. A fourth listing—11.14—featured in the ALJ's determination but not Tova A.'s objection. *See Thomas*, 474 U.S. at 150 (district judge need only review the magistrate judge's factual or legal conclusions specifically objected to).

*Id.* at 505.

Tova A.'s failure to marshal evidence in support of "extreme limitations" in this area dooms her challenge with respect to 11.04A, even if she does experience some degree of sensory or motor aphasia. And while Tova A. clearly points to evidence that her "pain affects her concentration," the record shows this pain mildly affected her ability to sustain attention and remember simple instructions and moderately affects her abilities in complex tasks. *Id.* at 507. "An impairment that manifests only some of [the listing's] criteria … does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Tova A. clearly has not identified evidence raising a substantial question whether she meets this listing. *See* 20 C.F.R. pt. 404, Subpt. P, App. 1, § 11.04A (citing §11.00E1).

**11.04B** requires "[d]isorganization of motor function" in two extremities, resulting in an "extreme limitation," in "the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities, persisting for at least 3 consecutive months after the insult." 20 C.F.R. § pt. 404, Subpt. P, App. 1 § 11.04B. An "extreme limitation" under this listing means the "inability to … maintain balance while standing and while walking, or use your upper extremities to independently initiate, sustain, and complete work-related activities." § 11.00D2.

Tova A. points to several pieces of evidence in support of this listing, including physical-therapy records and the report of the "consultative physical examiner," Dr. Nathan Bodily. Plaintiff's Fact and Law Summary at 2; Objections at 3. Tova A. also presents evidence of her "awkward, shuffling gait" and "left foot limp" as observed by Dr. Miller. Plaintiff's Fact and Law Summary at 2; Objections at 3.

Dr. Bodily, however, noted that Tova A. "can walk [and] stand for about 15–30 minutes" before "feel[ing] unsteady." Administrative Record at 493. He also observed that she doesn't use an "assistive ambulation device," was "not limited in sitting," and was able to get on and off the exam table "without assistance." *Id.* at 494. His report stated that Tova A. is "not limited in her ability to perform fine motor tasks" and could "perform all activities of daily living unassisted." *Id.*

Certainly, Tova A. points to evidence that she experienced motor-function limitations. *See id.* at 374–77 (physical therapy discharge records noting she "met physical therapy goals but does still demonstrate imbalance"). But this evidence falls short of raising a substantial question whether those limitations were "extreme." *See* § 11.00D2.

**11.04C** requires a "[m]arked limitation," § 11.00G2, in physical functioning, § 11.00G3a, *and* a marked limitation "in one of the … areas of mental functioning, both persisting for at least 3 consecutive months after the insult," 20 C.F.R. § pt. 404, Subpt. P, App. 1. § 11.04C. True, a finding that Tova A. "did not have an extreme limitation" does not imply that she "doesn't have a lesser, marked limitation." *Labelle v. Comm'r of Soc. Sec.*, 3:20-cv-2644, 2021 WL 8342835, at *9 (N.D. Ohio Dec. 1, 2021). But Tova A. "fail[ed] to articulate a theory … under which [s]he believes [s]he has

6

met [her] burden to meet or equal Listing 11.04[c]." *Gottron v. Comm'r of Soc. Sec.*, No. 3:22-cv-123, 2022 WL 17717498, at *8 (N.D. Ohio Oct. 5, 2022). In the end, however, the evidence Tova points to precludes a finding of even a marked limitation.

Here, a marked limitation in physical functioning means that a claimant is "seriously limited in the ability to independently initiate, sustain, and complete work-related physical activities." 20 C.F.R. § pt. 404, Subpt. P, App. 1. § 11.00G2a. And as discussed above, Dr. Bodily noted that Tova A. "can walk, stand for about 15–30 minutes," "could get on [and] off the exam table without assistance," was "not limited in sitting," and was "not limited in her ability to perform fine motor tasks." Administrative Record at 493–94. He found that Tova A. could "perform all activities of daily living unassisted." Administrative Record at 494. So the record information that Tova A. points to does not document evidence of a marked limitation, as defined in the listing criteria, because her limitations do not "seriously limit" her "ability to independently initiate, sustain, and complete work-related physical activities." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 11.03G3a.

Additionally, a marked limitation in mental functioning means a "seriou[s]" limitation in "the ability to function independently, appropriately, effectively, and on a sustained basis in work settings." § 11.03G2b. It implicates one's ability to "understand, remember, or apply information," "interact with others," "concentrate, persist, or maintain pace," or "adapt or manage oneself." § 11.03G3b(i)–(iv) (cleaned up). Here, too, Tova A.'s evidence falls short. As explained above, Dr. Miller rated Tova A.'s abilities in these areas as no more than moderately affected. Administrative Record at 506–08. Indeed, Dr. Miller concluded that Tova A. could "process instructions," "responds well to redirection and clarification," and could "relate well to peers, coworkers, the public and supervisors." Administrative Record at 506 (describing functional limitations). She did not point to evidence of marked limitation in either physical or mental functioning under the regulations.

**11.18 Traumatic brain injury.** Listing 11.18 implicates two distinct sets of criteria, A or B, which are identical to the B and C criteria discussed earlier in connection with listing 11.04. With respect to 11.18A, this listing requires "[d]isorganization of motor function" in two extremities, resulting in an "extreme limitation" in "the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities persisting for at least 3 consecutive months after the injury." 20 C.F.R. § pt. 404, Subpt. P, App. 1 § 11.18A. With respect to 11.18B, this listing requires a "[m]arked limitation in physical functioning" and a marked limitation "in one of the … areas of mental functioning, persisting for at least 3 consecutive months after the injury." *Id.* at § 11.18B (internal citations omitted).

To argue that the record raises a substantial question regarding this listing, Tova A. relies on the same evidence she pointed to for listing 11.04. *See* Plaintiff Fact and Law Summary at 3 (discussing evidence from psychological consultant and listings 11.04 and 11.18); Objections at 7 (similar). For the same reasons discussed above in connection with 11.04, Tova A. hasn't raised a substantial question with

respect to 11.18 either. The records that Tova A. points to do not document evidence of an extreme physical limitation or a marked limitation in both mental and physical function.

**12.02 Neurocognitive disorders**. A disorder under this listing requires proof of "a significant cognitive decline" and an "[e]xtreme limitation of one, or marked limitations of two … areas of mental functioning. 20 C.F.R. § pt. 404, Subpt. P, App. 1 § 12.02A–B. Tova A. contends that those "same errors"—that is, an alleged failure to ground conclusions in record evidence, *see Reynolds*, 424 F. App'x at 414— "were committed in evaluating the mental impairments" at issue under listing 12.02. Objections at 3–4. Tova A. argues the ALJ "did not evaluate, compare and explain the symptoms testified to and found in the record." *Id.* at 4.

The Magistrate Judge, however, ruled that the ALJ "thoroughly considered each of the four subparts of the paragraph B criteria" and "cited to medical evidence supporting his conclusions" in a manner "more than sufficient under the regulations." Report and Recommendation at 9. The relevant portions of the administrative record reveal no error in the Magistrate Judge's conclusions. In considering the first functional area (understanding, remembering, or applying information), for example, the ALJ referred to the "objective findings on consultative mental examination" and "the repeated prevailing within normal limits findings" located in "other treatment records from August 2018 to October 2019." Administrative Record at 25. The ALJ also noted that Dr. Miller, in August 2019, "found her to be rational, coherent, logical, organized, lucid and linear in her thinking and have a within normal limits fund of knowledge," though she "struggle[d] with concentration and time on task." Administrative Record at 33. This evidence, though detailed in the RFC section of the ALJ's decision, supports the finding that Tova A. "is, for the most part, able to understand, remember and apply information in an independent, appropriate and effective manner," *id.*, which weighed "against finding greater than moderate limitation," *id.* at 25. *See Forrest*, 591 F. App'x at 366 ("[T]he ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three."). This discussion provides a "logical bridge" between the ALJ's step-three and RFC analyses. *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011). When viewed in the light of the whole record, *Heston* 245 F.3d at 535, the step-three discussion allows for meaningful review of the ALJ's findings, which appear supported by substantial evidence. *See Reynolds*, 424 F. App'x at 414.

### 2. Objection to Residual Functional Capacity Finding

The RFC finding noted that Tova A. "has the residual functional capacity to perform sedentary work." Administrative Record at 26. The Magistrate Judge affirmed that finding because the ALJ's "consideration of the record was thorough," "his RFC determination was supported by substantial evidence," and because Tova A. "pointed to no contrary evidence that ALJ Morholt failed to consider." Report and Recommendation at 12.

8

But Tova A. argues that "[t]he record as a whole was not carefully considered" by the ALJ "in determining [residual functional capacity]." Objections at 6. Specifically, she says "[t]he ALJ erred in determining that specific limitations of being unable to recall 4 objects after 5 minutes, losing track of Serial 7s after 1 number," for example, contradict the ALJ's determination that she can "understand, remember, and carry out simple, routine tasks for two-hour periods in an 8-hour workday." *Id.*

"RFC" refers to what an individual can still do despite limitations. *See* 20 C.F.R. § 416.945(a)(1). And, as the Magistrate Judge correctly notes, "ALJ Morholt clearly considered the evidence Plaintiff relies on in her Fact and Law Summary." Report and Recommendation at 11. Tova A. argues that "the ALJ did not carefully consider the Frazier Rehabilitation records." Objections at 6. But the ALJ specifically commented on the Frazier rehab reports. *See* Administrative Record at 28–29 (noting she made "excellent progress" at her inpatient physical therapy sessions and "met [her] goals" at outpatient therapy "for standing, ambulation, [and] gait mechanics"). The ALJ also considered that "Dr. Miller estimated the claimant to have low average cognitive ability, and found her to show memory and concentration deficits for recall after 5 minutes, digit-span testing and serial subtraction by 7's." Administrative Record at 33. Despite these limitations, Dr. Miller "also found her to be rational, coherent, logical, organized, lucid and linear in her thinking and have a within normal limits fund of knowledge." *Id.* On the basis of this and other evidence, including Tova A.'s own testimony, the ALJ determined that "the total medical and other evidence weighs against a finding of disability or additional or greater functional limitation." *Id.* at 34. Tova A.'s disagreement notwithstanding, "[s]ubstantial evidence exists when"—as here—"a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). The Court, therefore, finds no error in the decisions below.

### 3. Objection to Transferability of Job Skills Finding

Tova A. objects to the Transferability of Job Skills finding:

> The Magistrate Judge affirmed the ALJ's determination based on the supportability of the ALJ's RFC. Tova agrees that the finding is dependent on the RFC but objects to the conclusion that the RFC is supported by substantial evidence….

Objections at 6. As explained above, the RFC finding noted that Tova A. "has the residual functional capacity to perform sedentary work." Administrative Record at 26. Tova A.'s cursory and unsupported objection here "is tantamount to a complete failure to object." *Zimmerman v. Cason*, 354 F. App'x 228, 230 (6th Cir. 2009). It cites no evidence at all—not to mention evidence that undermines the Magistrate

9

Judge's or ALJ's findings. The Court nevertheless reviewed Judge Edwards's conclusions, finds no error (for the same reasons set forth in the RFC discussion above), and overrules this objection.

## IV.

The Court overrules the Claimant's objections and, consistent with the reasons set forth here, affirms the Report & Recommendation.

Benjamin Beaton, District Judge
United States District Court

March 31, 2023